Ashley Wiberg (#033281)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: awiberg@swlaw.com
*Attorneys for Defendant C. R. Bard, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alfred Joseph Montalbano, Jr., as surviving spouse of Patricia Lee Montalbano, deceased,<br><br>Plaintiff,<br><br>v.<br><br>Honor Health, an Arizona nonprofit corporation; Arizona Premier Surgery, an Arizona corporation, partnership and/or business organization; Valley Anesthesiology Consultants, Inc., an Arizona corporation, partnership and/or business organization; Albert Amini, M.D. and Jane Doe Amini, husband and wife; Amar Jitendra Thosani, M.D. and Jane Doe Thosani, husband and wife; Daniel Parsons, M.D. and Jane Doe Parsons, husband and wife; Maria Saldivar, M.D. and John Doe Saldivar, wife and husband; Starr Elizabeth Eads, M.D. and John Doe Eads, wife and husband; Kaitlin Makenzie Betcher, P.A., and John Doe Betcher, wife and husband; Laura Lee Martinez (aka Laura Lee Lu) C.R.N.A and John Doe Martinez/Lu, wife and husband; Hannah Robertson, R.N. and John Doe Robertson, wife and husband; Stephanie Wogan, R.N. and John Doe Wogan, wife and husband; Catherine Heitert, R.N. and John Doe Heitert, wife and husband; C. R. Bard, a wholly owned subsidiary of Becton Dickinson and Company, a New jersey corporation, partnership, or other business entity; John Does I-X; Jane Does I-X; Black and White Corporations I-V; Black and White Partnerships I-V,<br><br>Defendants. | No.<br><br>**[Removal From Superior Court Of Arizona, County Of Maricopa, Case No. CV2022-002736]**<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)**<br><br>**[Filed concurrently with Civil Cover Sheet; Corporate Disclosure Statement; and Demand for Jury Trial]** |

4893-4373-7894

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**:

**PLEASE TAKE NOTICE THAT** Defendant C. R. Bard, Inc., ("Bard") hereby removes this action from the Superior Court of the State of Arizona, County of Maricopa, to the United States District Court for the District of Arizona. Removal is based on 28 U.S.C. §§ 1332, 1441, and 1446.

In support of this Notice of Removal, Bard states as follows:

**I.     PROCEDURAL BACKGROUND AND RELEVANT FACTS**

1.     On March 4, 2022, Plaintiffs filed a Complaint styled *Alfred Joseph Montalbano, Jr., as surviving spouse of Patricia Lee Montalbano, deceased, v. Honor Health, an Arizona nonprofit corporation; Arizona Premer Surgery, an Arizona corporation, partnership and/or business organization; Valley Anesthesiology Consultants, Inc., an Arizona corporation, partnership and/ or business organization Albert Amini, M.D. and Jane Doe Amini, husband and wife; Amar Jitendra Thosani, M.D. and Jane Doe Thosani, husband and wife; Daniel Parsons, M.D. and Jane Doe Parsons, husband and wife; Maria Saldivar., M.D. and John Doe Saldivar, wife and husband; Starr Elizabeth Eads, M.D. and John Doe Eads, wife and husband; Kaitlin Makenzie Betcher, P.A., and John Doe Betcher, wife and husband; Laura Lee Martinez (Aka Laura Lee Lu) C.R.N. and John Doe Martinez/Lu, wife and husband Hannah Robertson, R.N. and John Doe Robertson., wife and husband; Stephanie Wogan, R.N. and John Doe Wogan, wife and husband; Catherine Heitert, R.N. and John Doe Heitert, wife and husband* (collectively, "Healthcare Defendants"), in the Superior Court of Maricopa County, Arizona, Case No. CV-2022-002736. *See* Exhibit 1, Complaint.

2.     On March 14, 2022, Plaintiffs filed a First Amended Complaint styled *Alfred Joseph Montalbano, Jr., as surviving spouse of Patricia Lee Montalbano, deceased, v. Honor Health, an Arizona nonprofit corporation; Arizona Premer Surgery, an Arizona corporation, partnership and/or business organization; Valley Anesthesiology Consultants, Inc., an Arizona corporation, partnership and/ or business organization; Honor Health, an*

*Arizona nonprofit corporation; Albert Amini, M.D. and Jane Doe Amini, husband and wife; Amar Jitendra Thosani, M.D. and Jane Doe Thosani, husband and wife; Daniel Parsons, M.D. and Jane Doe Parsons, husband and wife; Maria Saldivar., M.D. and John Doe Saldivar, wife and husband; Starr Elizabeth Eads, M.D. and John Doe Eads, wife and husband; Kaitlin Makenzie Betcher, P.A., and John Doe Betcher, wife and husband; Laura Lee Martinez (Aka Laura Lee Lu) C.R.N. A and John Doe Martinez/Lu, wife and husband Hannah Robertson, R.N. and John Doe Robertson., wife and husband; Stephanie Wogan, R.N. and John Doe Wogan, wife and husband; Catherine Heitert, R.N. and John Doe Heitert, wife and husband; C R Bard, a wholly owned subsidiary of Becton Dickinson and Company, a New jersey corporation, partnership, or other business entity; John Does I-X; Jane Does I-X; Black and White Corporations I-V; Black and White Partnerships I-V*, in the Superior Court of Maricopa County, State of Arizona, Case No. CV-2022-002736. *See* Exhibit 2, First Amended Complaint.

3.   C. R. Bard, Inc., sued as "C. R. Bard, a wholly owned subsidiary of Becton Dickinson and Company, a New Jersey corporation, partnership, or other business entity," ("Bard") was served with the First Amended Complaint on June 14, 2022.

4.   Upon information and belief, the Healthcare Defendants have not yet been served with the Summons and First Amended Complaint.

5.   Under 28 U.S.C. § 1446(b)(1), "all defendants who have been properly joined and served must join in or consent to the removal of the action." Therefore, Bard, the only properly joined and served defendant, consents to the removal of this action.[1]

---

[1] None of the remaining "Doe" defendants have been substituted with any named defendants or been served with process in the State Court Action. For the purpose of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." *See* 28 U.S.C. § 1441(b)(1); *Dream Team Holdings LLC v. Alarcon*, No. CV-16-01420-PHX-DLR, 2016 U.S. Dist. LEXIS 140196, at *10 (D. Ariz. Oct. 7, 2016) (finding that "the citizenship of defendants sued under fictitious names shall be disregarded for the purposes of removal") (citing *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998)). Therefore, the citizenship of all of the fictitious defendants sued as "Does" should be disregarded for purposes of determining diversity.

6. The Healthcare Defendants were fraudulently joined, and even if Plaintiff served the Healthcare Defendants with the Summons and First Amended Complaint, their consent is not required for removal of this action. *See United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (fraudulently joined defendant need not join in removal petition).

7. This action involves allegations relating to a Bard "medical mesh product" used in a "hiatal hernia repair with mesh" which Plaintiff alleges was manufactured and sold by Bard.[2] *See* First Am. Compl. at ¶¶ XVIII, XXIII. Plaintiff alleges on or around March 9, 2020, Plaintiff Patricia Montalbano underwent a "hiatal hernia repair with mesh and TIF." *Id*. at ¶ XVIII. Plaintiff alleges that Ms. Montalbano experienced "complications of acute peritonitis and sepsis due to infection and graft dehiscence in the diaphragmatic hiatus." *Id.* at ¶ XIX.

8. Plaintiff asserts a claim for "Medical Negligence and Wrongful Death" against the Healthcare Defendants. *See* First Am. Compl., Count I, ¶¶ XVIII-XXII.

9. Plaintiff asserts claims for "Product Negligence and Wrongful Death" against Bard and Healthcare Defendants Albert Amini, M.D., Ainar Jitendra Thosani, M.D., Starr Elizabeth Eads, Honor Health, and Arizona Premier Surgery, alleging "Defendants" "failed to exercise reasonable care with respect to the design, inspection, making, assembling, developing, advertising, marketing manufacture, production, testing, inspecting, distributing, using, inserting, attaching, researching, and/or sale of the medical mesh product used in the March 9, 2020" implant surgery. *See* First Am. Compl., Count II, ¶¶ XXIII.

10. Plaintiff asserts claims for "Products Liability Defective Product and Wrongful Death" against Bard and Healthcare Defendants Albert Amini, M.D., Ainar Jitendra Thosani, M.D., Starr Elizabeth Eads, Honor Health, and Arizona Premier Surgery, alleging "Defendants failed and continue to fail to provide consumers, either directly or

---

[2] Bard does not admit any liability or waive any defenses in removing this action, including with respect to product identification.

- 4 -

4893-4373-7894

indirectly, . . . with adequate or sufficient warnings regarding the known or foreseeable risks and dangers inherent to the product." *See* First Am. Compl., Count III, ¶ XXIV. Plaintiff further alleges "Defendants chose to sell the defective product to consumers, . . . made a profit from selling the defective product and . . . are in the best position bear the cost of damages caused by the defective product and to make sure the products they sell to the public are not defective and safe." *Id.* ¶ XXIV.

11.   No previous request has been made for the relief requested herein.

12.   No party in interest properly joined and served as a defendant in this action is a citizen of the state (Arizona) in which this action was brought. *See* 28 U.S.C. § 1441(b).

13.   The United States District Court for the District of Arizona comprises the county in which this matter is now pending (County of Maricopa) and thus, pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 82, venue is proper.

## II.   THIS NOTICE OF REMOVAL IS TIMELY

14.   This Notice of Removal is filed within 30 days after Bard's receipt, through service or otherwise, of the initial pleading setting forth a claim for relief upon which this action is based. *See* 28 U.S.C. § 1446(b). Accordingly, Bard's removal of this action is timely.

15.   As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Bard has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. In filing this Notice of Removal, Bard reserves all defenses, including but not limited to lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, and failure to join and/or misjoinder of parties.

## III.   JURISDICTION AND VENUE ARE PROPER

16.   This Court has jurisdiction over this removed action pursuant to 28 U.S.C. §§ 1332 and 1441. Pursuant to 28 U.S.C. §1332(a), this Court has original jurisdiction over this action because complete diversity of citizenship exists between Plaintiff and all

1  properly joined and served Defendants, and the amount in controversy exceeds $75,000, exclusive of interests and costs.[3]

        **A.**    **There Is Complete Diversity of Citizenship Between Plaintiff and All Properly Joined and Served Defendants**

17. Plaintiff pleads that Plaintiff Alfred Joseph Montalbano Jr. is and was, at all relevant times, married to Patricia Lee Montalbano, . . . [and] both were residents at all relevant times of the County of Maricopa, State of Arizona. *See* First Am. Compl. at ¶ I. Plaintiff is a citizen of Arizona for purposes of determining diversity.

18. C. R. Bard, Inc. is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

19. Plaintiff pleads that Alfred Joseph Montalbano Jr. is and was, at all relevant times, married to Patricia Lee Montalbano, . . . both were residents at all relevant times of the County of Maricopa, State of Arizona." *See* First Am. Compl. at ¶ I. Plaintiff is a citizen of Arizona for purposes of determining diversity.

20. Plaintiff pleads that Defendant Honor Health, "at their hospital SSMC Shea Medical Center in Scottsdale, Arizona at all relevant times, is and was an Arizona non-profit corporation." *See* First Am. Compl. at ¶ V.

21. Upon information and belief, Defendants Honor Health Corporation, Valley Anesthesiology Consultants, Inc., and Arizona Premier Surgery, were corporations

---

[3] After removal, Bard intends to seek transfer of this action to *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation,* Case No. 2:18-md-2846, MDL No. 2846 (S.D.OH) ("MDL 2846"), because this case is one of many that have been filed in both federal and state courts across the country involving Bard's hernia repair devices made, at least in part, with polypropylene, including the product at issue in this action. This action belongs in MDL 2846 to facilitate judicial economy and coordinated pretrial proceedings. Further, there are several other actions in MDL 2846 raising substantially similar issues of joinder of medical malpractice claims against healthcare defendants and product liability claims, and, to the extent such jurisdictional issues are likely to recur, the MDL Judge should rule on such matters for consistency of results.

- 6 -

1   organized under the laws of the State of Arizona with their principal places of business in
2   Arizona. *See* First Am. Compl. at ¶¶ VI-XVI.

3         22.    Upon information and belief, Defendants Albert Amini, M.D., Amar Jitendra
4   Thosani, M.D., Daniel Parsons, M.D., Starr Elizabeth Fads, M.D., Maria Saldivar, M.D.,
5   Kaitlin Makenzie Betcher, P.A., Laura Lee Martinez (aka Laura Lee Lu) C.R.N.A., Hannah
6   Robertson, R.N., Stephanie Wogan, R.N., Catherine Heitert, R.N., are citizens and residents
7   of the state of Arizona. *Id.*

8         23.    The Healthcare Defendants' citizenship does not preclude the proper removal
9   of this action because they were fraudulently joined in this case. Thus, there is complete
10  diversity of citizenship between Plaintiff and all properly joined and served Defendants.

11      **B.**    **The Court Should Disregard The Healthcare Defendants' Citizenship
12  for Jurisdictional Purposes Because They Are Fraudulently Joined in this Action**

13        24.    The doctrine of fraudulent joinder represents an exception to the
14  requirement that removal be predicated solely upon complete diversity. *See Navarro Sav.*
15  *Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal
16  parties and rest jurisdiction only upon the citizenship of real parties to the controversy."
17  Although the Healthcare Defendants are alleged to be Arizona citizens (*see* First Am.
18  Compl., ¶¶ V-XVI), they are fraudulently joined defendants whose citizenship must be
19  disregarded by the Court. *See, e.g., Wilson Republic Iron & Steel Co.*, 257 U.S. 92, 97
20  (1921). Joinder is fraudulent when "the plaintiff fails to state a cause of action against a
21  resident defendant, and failure is obvious according to the settled rules of the state."
22  *McCabe v. General Foods Corp.*, 811 F.2d 1336 (9th Cir. 1987). In making this
23  determination, a district court is allowed to pierce the pleadings and consider summary
24  judgment-type evidence, in addition to the allegations contained in the plaintiff's complaint.
25  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (citations omitted).
26  The defendants who seek removal to federal court are entitled to present the facts showing
27  the joinder to be fraudulent, and the Ninth Circuit expressly allows district courts to consider
28  these facts. *McCabe*, 811 F.2d at 1339.

4893-4373-7894

25. It is obvious that Plaintiff fails to state a cause of action against the Healthcare Defendants in the First Amended Complaint. In fact, the substantive allegations against the Healthcare Defendants essentially claim that they engaged in "selling, marketing, inserting, inspecting, attaching, using, researching, and distributing the medical mesh product used" in Plaintiff Patricia Montalbano's implant operation. *See* First Am. Compl., ¶¶ XXIII-XXIV. However, the Healthcare Defendants are licensed health care providers who cannot be held liable for allegedly defective products implanted at their hospitals, and Plaintiff has not complied with the procedural requirements to allege professional negligence claims. Accordingly, it is clear that the Healthcare Defendants were fraudulently joined in an attempt to defeat diversity jurisdiction because there is no possibility Plaintiff could prevail against them on any claims.

26. Further, any medical malpractice claims asserted against the Healthcare Defendants are subject to Arizona's statutory requirements for claims against licensed professionals. *See* A.R.S. § 12-2601 *et seq*. For instance, pursuant to A.R.S. § 12-2603, a Plaintiff filing a medical malpractice action must certify whether or not expert opinion testimony is necessary to prove the standard of care for liability for the claim. The certification is to be "filed and served with the claim." A.R.S. § 12-2603; *Gorney v. Meaney*, 150 P.3d 799, 805 (Ariz. Ct. App. 2007) (summary judgment against medical malpractice plaintiff is proper where plaintiff failed to provide expert opinion affidavit). Plaintiff failed to allege compliance with A.R.S. § 12-2603, which seeks to "curb frivolous medical malpractice lawsuits by imposing a stricter standard of pleading and setting deadlines for the early involvement of the plaintiff's expert witnesses." *Id*. at 804. Therefore, Plaintiff's failure to comply with basic requirements for filing a claim against a health care provider demonstrates that the Healthcare Defendants were fraudulently joined in this action. Numerous courts have found plaintiffs have fraudulently joined non-diverse healthcare providers in cases alleging medical malpractice and product liability claims based on injuries allegedly related to implantation of a medical device, where, as here, a plaintiff has failed to fulfill the state law medical malpractice prerequisites. For example,

the Fifth Circuit Court of Appeals held, *en banc*, that the addition of a Louisiana healthcare provider to a lawsuit against a medical device manufacturer constitutes improper joinder and does not defeat the court's diversity jurisdiction when the plaintiff fails to comply with pre-suit notice requirements for medical malpractice claims. *See Flagg v. Stryker Corp.*, 819 F.3d 132, 138 (5th Cir. 2016) ("It follows that, at the time of removal, Flagg was unable to "establish a cause of action against the [Medical Defendants] in state court. Thus, the district court properly discounted the citizenship of the Medical Defendants."); *Porter v. Stryker Corp.*, No. 6:19-0265, 2019 U.S. Dist. LEXIS 135859 (W.D. La. Aug. 12, 2019) (denying motion to remand, based on fraudulent joinder where plaintiff "has not exhausted his administrative remedies by presenting these claims to a medical review panel," and ruling "the citizenship of [the healthcare provider] is to be disregarded"); *Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 263 F. Supp. 3d 639, 644 (S.D. W.Va. 2017) (denying remand, ruling that "West Virginia Code § 55-7B-6, imposes a series of procedural prerequisites for filing a medical malpractice claim," and "[i]f this requirement is not met, the case must be dismissed").

27.  To the extent Plaintiff's claim against the Healthcare Defendants is not barred by the procedural requirements of A.R.S. §12-2603, Plaintiff's "Product Negligence and Products Liability" claims are still not viable because licensed heath care providers like the Healthcare Defendants are not engaged in the business of selling medical devices and cannot be held liable for strict products liability as a matter of law. Plaintiff's "Product Negligence and Products Liability" claims are governed by A.R.S. § 12-681, which defines a "seller" as a "person or entity, including a wholesaler, distributor, retailer or lessor, that is engaged in the business of leasing any product or selling any product for resale, use or consumption." Ariz. Rev. Stat. § 12-681(9). A hospital who charges a fee for a medical device that is implanted in a patient during surgery is not a "seller" of the product for purposes of products liability. As licensed health care providers, the Healthcare Defendants are not a manufacturer, wholesaler, or retailer of any Bard hernia repair devices or other medical devices and are not "engaged in the business of . . . selling [the] product." *Id*.

- 9 -

28. Although Arizona courts have not expressly ruled hospitals cannot be strictly liable for the use of medical devices implanted during the provision of necessary medical services, courts define "seller" according to the justification for imposing strict liability, which is "risk/cost spreading to those parties in the distribution chain that are best able to both bear the cost and protect the consumer from defective products." *Antone v. Greater Arizona Auto Auction, Inc.*, 155 P.3d 1074, 1076 (Ariz. Ct. App. 2007). Further, even if existing Arizona law does not dictate the dismissal the Plaintiff's claims against the Healthcare Defendants, his claims should be dismissed based on Arizona's adoption of the Restatement (Third) of Torts: Products Liability ("Third Restatement") for the learned intermediary doctrine, and general approval of the other provisions therein. *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 949 (2016) ("In our view, the Third Restatement properly states the LID, and therefore we adopt § 6(d) as our expression of it."); *see also Harrison v. Howmedica Osteonics Corp.*, No. CIV 06-0745 PHX RCB, 2008 U.S. Dist. LEXIS 26197, at *68-69 (D. Ariz. Mar. 27, 2008) (applying § 6 to medical devices). Arizona courts have also favorably cited Third Restatement § 20, cmt. d. of which states that "in a strong majority of jurisdictions, hospitals are held not to be sellers of products they supply in connection with the provision of medical care, regardless of the circumstances." *See, e.g. State Farm Fire & Cas. Co. v. Amazon.com Inc.*, 407 F. Supp. 3d 848, 855 (D. Ariz. 2019) (ruling that Amazon should not be liable for sale of third-party products, "because it exercises an insufficient degree of control over such products," a "conclusion . . . also consistent with, although not dependent on, the Third Restatement of Torts' statement that "product distribution facilitators," . . . are generally not subject to strict products liability," citing § 20). Notably, the majority of courts nationwide, including courts within the Ninth Circuit, have concluded that under the principles of the Restatement, hospitals cannot be liable for products liability because they are not in the business of selling products that are implanted in patients. *Johnson v. Zimmer Spine, Inc.*, No. 2:08-CV-00672-KJD-LRL, 2008 U.S. Dist. LEXIS 144619, at *7 (D. Nev. Aug. 8, 2008) ("In the majority of jurisdictions, the doctrine of strict product liability generally is not applied to hospitals,

4893-4373-7894

unless the hospital was negligent or involved in intentional misconduct."). Courts reason that hospitals provide professional medical services, and a product implanted in a patient is provided as part of that service. For example, in *Johnson*, plaintiff was implanted with a medical device during a surgery to repair his spine, the device was allegedly defective, and he filed suit against the hospital and device manufacturer. The District Court concluded that the hospital could not be classified as a seller of the medical product because hospitals are "ultimate consumers" of medical devices utilized in the medical services they provide. 2008 U.S. Dist. LEXIS 144619, at *7, *8. The Court reasoned that "the essence of the relationship between a hospital and its patients does not relate essentially to any product or piece of equipment . . . **but to the professional services it provides**." *Id*. (citations and quotations omitted) (emphasis added); *see also Hector v. Cedars-Sinai Medical Center*, 180 Cal. App. 3d 493, 505 (1986) (hospital was not subject to strict liability for a defective pacemaker because the "patient does not enter the hospital merely to purchase a pacemaker but to obtain a course of treatment which includes implantation of a pacemaker"); *Silverhart v. Mount Zion Hospital*, 20 Cal. App. 3d 1022, 1027-28 (1971) (strict product liability claims against a hospital could not be maintained because "a hospital is not ordinarily engaged in the business of selling any of the products or equipment it uses in providing [medical] services").

29. The majority of courts examining this issue have held that a hospital is not a seller subject to products liability claims under the Restatement and its analogous state statutes. *See Vergott v. Deseret Pharm. Co.*, 463 F.2d 12, 16 (5th Cir. 1972) ("a hospital is not a seller engaged in the business of selling the product"). *See also Zbras v. St. Vincent's Med. Ctr.*, No. CV95323593S, 2002 WL 532441, at *1 (Conn. Super. Ct. Mar. 20, 2002) (granting summary judgment in favor of hospital defendant who implanted an allegedly defective screw because "hospitals are not engaged in the business of selling equipment utilized in operative procedures but rather are engaged in the business of providing medical services"); *Lederman v. Howmedica Osteonics Corp.*, No. 8:13-cv-506-T-30AEP, 2013 U.S. Dist. LEXIS 51659 (M.D. Fl. April 10, 2013) (physician defendant who implanted a

- 11 -

4893-4373-7894

1  hip prosthesis was fraudulently joined because "strict liability claims are limited to
2  manufacturers and others in the distribution chain" and thus plaintiff's product liability
3  claims fail as a matter of law); *North Miami General Hosp., Inc. v. Goldberg*, 520 So. 2d
4  650, 652 (Fla. Ct. App. 1988) (strict liability may not be invoked by patient against a
5  hospital or physician in the use of a defective medical implement).[4]

6      30. The Healthcare Defendants purchased the Bard hernia repair device from Bard and there is no allegation that they altered the device. Indeed, allegations against the Healthcare Defendants are wholly inconsistent with the gravamen of Plaintiff's First Amended Complaint. Plaintiff's allegations against the Healthcare Defendants, the hospital and healthcare providers responsible for implantation of the Bard hernia device, cannot be reconciled with his core product liability allegations against Bard. The crux of Plaintiff's First Amended Complaint against the "Defendants" is that the Bard hernia repair devices have a "known history of being defective, unsafe, failing, and causing damage, injury and death." First Am. Compl., ¶¶ XXIII-XXIV. The First Amended Complaint further asserts that Defendants were responsible for "designing, inspecting, making, developing, assembling, researching, manufacturing, producing, testing, inspecting, marketing, advertising, distributing, and selling the product." *Id*. Further, Plaintiff alleges that "Defendants" purportedly "failed and continue to fail to provide consumers, . . . with

---

4 *See also Royer v. Catholic Med. Ctr.*, 144 N.H. 330, 334 (1999) ("We find the reasoning of . . . the majority of courts that have declined to extend strict liability to health care providers who supply defective prostheses to be persuasive," reasoning that a patient "does not enter a hospital to 'purchase' a prosthesis, 'but to obtain a course of treatment in the hope of being cured of what ails him'"); *Probst v. Albert Einstein Medical Center*, 440 N.Y.S. 2d 2, 3 (N.Y .Ct. App. 1981) (leave to amend complaint to add product liability claims against physician and hospital who implanted a metal rod into plaintiff should have been denied, as they do not sell medical devices to patients, and thus state no valid grounds for relief); *Cafazzo v. Central Medical Health Services, Inc.*, 542 Pa. 526, 533 (Pa. Sup. Ct. 1995) (the hospital who implanted a mandibular prosthesis was not in the business of selling device, as its use was only "incidental to [the hospital's] primary function of providing medical services") (citation omitted); *In re Breast Implant Product Liability Litigation*, 331 S.C. 540, 546 (S.C. Sup. Ct. 1998) (product liability claims cannot be sustained against hospitals who implanted breast implants because health care providers are not "sellers"); *Easterly v. HSP of Texas, Inc.*, 772 S.W. 2d 211, 213 (Tex. Ct. App. 1989) (summary judgment properly granted in favor of hospital on strict products liability claim because "'sale' of the epidural kit was integrally related to the medical procedure – the kit was not a separate good sold in a commercial transaction").

1     adequate or sufficient warnings regarding the known or foreseeable risks and dangers
2     inherent to the product." *Id*.  Notably, however, there is no allegation that the Healthcare
3     Defendants played any role in the design, manufacture, warnings, or marketing of the Bard
4     hernia repair device and because they did not—and could not—have had access to
5     information that was allegedly withheld from the general public, the Healthcare Defendants
6     cannot be held responsible for Plaintiff's alleged injuries.

7     31.    In short, the thrust of Plaintiff's First Amended Complaint is that Bard – not
8     the Healthcare Defendants – was responsible for the alleged defects in the design,
9     manufacture, warnings, marketing, and sale of the Bard hernia repair device that
10    purportedly caused Plaintiff's injuries.

11    32.    By contrast, the claims against the Healthcare Defendants are based on
12    whether they breached the duty of care in the provision of medical services to Mrs.
13    Montalbano.  First Am. Compl., ¶¶ XVIII-XXII.  The crucial aspects of the two claims are
14    diametrically opposed and logically inconsistent.  In similar circumstances, courts have
15    consistently found fraudulent joinder where plaintiffs have improperly joined product
16    liability claims against pharmaceutical manufacturers with contradictory medical
17    malpractice claims against healthcare providers.  *See, e.g.*, *Baisden v. Bayer*, 275 F. Supp.
18    2d 759, 762-63 (S.D.W. Va. 2003) (denying remand where complaint alleged that
19    manufacturer concealed or misrepresented safety information regarding prescription drug,
20    while alleging that physician was negligent in failing to warn of potential risks); *In re*
21    *Baycol Prods. Litig.*, No. MDL 1431(MJD), 02-4835, 2003 WL 21223842, at *2 (D. Minn.
22    May 27, 2003) (finding that a physician was fraudulently joined when allegations that he
23    knew or should have known of Baycol's risks were inconsistent with allegations that the
24    manufacturer concealed information).[5]  As in the cases above, this Court should rule that
25    the Healthcare Defendants are fraudulently joined.

---

26    5 Similarly, numerous courts have ruled that plaintiffs improperly joined malpractice claims
27    against healthcare providers with product liability claims against prescription product
      manufacturers.  *See, e.g.*, *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008)
28    (holding that malpractice claims against healthcare providers were fraudulently misjoined
      with claims against manufacturers for the allegedly defective mesh patch, and "to preserve

- 13 -

4893-4373-7894

33. Accordingly, the Court should not consider the Healthcare Defendants' in-state status as a bar to removal because the fraudulent joinder of the Healthcare Defendants is obvious under well-settled state law.

## IV. THE AMOUNT IN CONTROVERSY IS MET

34. Only a simple pleading that asserts a "plausible allegation" is necessary to show that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014). Once made, a defendant's allegations are presumed correct. *See id.*

35. When the amount in controversy is not specified in the Complaint, as in the present case, the Court may consider the facts alleged in the Complaint as well as in the notice of removal. *See Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002). To determine the amount in controversy, a district court takes into account claims for general damages, pain and suffering, out-of-pocket loss, emotional distress, and punitive damages. *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449-50 (S.D. Cal. 1995). Additionally, the "amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quoting *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)). Although the First Amended Complaint

---

the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum."); *see also In re Guidant Corp., Implantable Defibrillators Prods. Liab. Litig.,* MDL No. 05-1708, Case No. 07-1129, 2007 WL 5377783, *7 (D. Minn. June 4, 2007) (severing and remanding only the claims against defendant hospital because "the basis for the causes of action against [the hospital] do not arise from the same transaction and occurrences as those in the causes of action against the [medical device manufactures]"); *In re Rezulin Prod. Liab. Litig.*, MDL No. 1348, 2003 WL 21276425, *1-2 (S.D.N.Y June 2, 2003) (finding claims against non-diverse physician were misjoined with claims against drug manufacturer); *Stone v. Zimmer, Inc.,* No. 09-08202-CIV, 2009 WL 1809990, *4 (S.D. Fla. June 25, 2009) ("The joinder of the malpractice claim against [the doctor] and the [pain management center] with the product liability claim against [the product manufacturer] is thus inappropriate because these claims do not both involve common questions of law or fact and do not assert joint, several or alternative liability arising out of the same transaction, occurrence or series of transactions or occurrences.") (internal quotation omitted).

- 14 -

1  does not allege a specific amount of damages, given the severity and type of injuries alleged
2  in Plaintiff's First Amended, the amount-in-controversy requirement is met here because it
3  is facially apparent that the amount in controversy exceeds the jurisdictional requirement.
4  *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (holding
5  that the amount in controversy is satisfied where plaintiffs alleged economic loss, medical
6  and health expenses, and claimed serious medical conditions).

36. Plaintiff alleges multiple adverse events after the Bard hernia repair device implantation, claiming "Plaintiff Alfred Joseph Montalbano Jr. and all other wrongful death statutory beneficiaries, sustained wrongful death damages in the exact amounts to be shown with specificity at time of trial." First Am. Compl., ¶ XXV. Plaintiff further seeks damages including, "wrongful death damages," "special and general damages in such amount as is fair and reasonable . . . including, but not limited to, grief, mental and physical suffering, economic loss, depression, loss of sleep, anxiety, personal loss, companionship, burial expenses, funeral expenses, suffering, and emotional trauma;" and "such other and further relief as the Court deems just and equitable." *Id.*, Prayer for Relief.

37. Therefore, in light of the alleged severity of the injuries set forth in the First Amended Complaint, and the claimed damages for past and future non-economic and economic losses, including punitive damages, it is "facially apparent" that the amount in controversy exceeds $75,000, exclusive of interest and costs, *see In re Rezulin*, 133 F. Supp. 2d at 296, and Bard sufficiently alleges the basis for diversity jurisdiction at the notice-of-removal stage. *See Dart*, 135 S. Ct. at 553.

## V. **REMOVAL IS OTHERWISE PROPER**

38. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders and the current state court docket sheet are attached to this Notice of Removal as Exhibit 3.

39. Bard will file a copy of this Notice of Removal with the Clerk of the Superior Court of Arizona, Maricopa County, the state court in which this action is currently pending, as required by 28 U.S.C. § 1446(d). Defendant's Notice to Plaintiff of Filing of Notice of

Removal is also being filed and served upon Plaintiff's counsel as required by 28 U.S.C. § 1446(d).

**WHEREFORE**, Defendant, pursuant to 28 U.S.C. § 1441, respectfully removes this action from Superior Court of Arizona, Maricopa County, to the United States District Court for the District of Arizona.

DATED this 30th day of June, 2022.

SNELL & WILMER L.L.P.

By: *s/Ashley Wiberg*
Ashley Wiberg
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
*Attorneys for Defendant C. R. Bard, Inc.*

4893-4373-7894

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record in this matter:

*s/Kathy Sprinkle*

- 17 -

4893-4373-7894